IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IAN BELL, Derivatively on, Behalf of ECO SCIENCE SOLUTIONS, INC., <br><br>   Plaintiffs, <br><br>   vs. <br><br> JEFFREY TAYLOR, DON LEE TAYLOR, L. JOHN LEWIS, S. RANDALL OVESON, and GANNON GIGUIERE, <br><br>   Defendants. | CIVIL 17-00530 LEK-RLP |

**ORDER DENYING DEFENDANT'S MOTION TO STAY CIVIL CASE**

Before the Court is Defendants Jeffrey Taylor ("J. Taylor"), Don Lee Taylor ("D. Taylor"), L. John Lewis ("Lewis"), S. Randall Oveson ("Oveson"), Gannon Giguiere ("Giguiere"), and Nominal Defendant Eco Science Solutions, Inc.'s ("ESSI" and collectively "Defendants") Motion to Stay Civil Case ("Motion"), filed on January 29, 2019. [Dkt. no. 84.] Plaintiffs Ian Bell ("Bell") and Marc D'Annunzio ("D'Annunzio," collectively "Plaintiffs") filed their memorandum in opposition on February 22, 2019, and Defendants filed their reply on March 1, 2019. [Dkt. nos. 89, 91.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice for the United

States District Court for the District of Hawaii ("Local Rules"). Defendants' Motion is hereby denied because, after weighing the particular circumstances and interests in this case, the Court concludes not substantial prejudice will result from proceeding with the parallel criminal and civil cases.

**BACKGROUND**

This case arises out of the business transactions surrounding ESSI from December 2015 to January 2018. Plaintiffs allege that Giguiere was the mastermind of an elaborate "pump-and-dump" scheme where Defendants artificially inflated ESSI's stock price through false representations and manipulative trading practices, then sold large quantities of the inflated stock to other investors. [Verified Amended Consolidated Stockholder Derivative Complaint ("Amended Complaint"), filed 12/10/18 (dkt. no. 78), at ¶¶ 2-4.]

In December 2015, Defendants J. Taylor and D. Taylor obtained the controlling shares of ESSI. J. Taylor was named as ESSI's Chief Executive Officer ("CEO") and D. Taylor as ESSI's Chief Financial Officer ("CFO"). They were also named ESSI's sole directors. [Id. at ¶¶ 61-62.] In addition, J. Taylor is ESSI's President and Secretary, and D. Taylor is ESSI's Treasurer. [Id. at ¶¶ 36-37.] Throughout 2016 and 2017, ESSI entered into numerous business deals, mainly with companies

2

owned or controlled by Giguiere or other Defendants.  [Id. at ¶¶ 9, 16, 18, 38-39.]

The first such business deal was an agreement to purchase "technology licensing and marketing support" from Separation Degrees – One, Inc. ("SDOI"), a company of which Giguiere was "the founder, Chairman, CEO, Secretary, and President."  [Id. at ¶ 66.]  As payment for the services by SDOI, ESSI transferred large quantities of its own stock to SDOI, which "translated into millions of dollars for defendant Giguiere."  [Id. at ¶¶ 83-84.]  The "marketing support" of SDOI took the form of two articles posted to TheMoneyStreet.com, a stock promotion website also controlled by Giguiere.  The articles encouraged readers to purchase ESSI stock, driving prices up.  [Id. at ¶¶ 76-82.]  The "technology licensing" was a software platform that ESSI used to build two mobile applications, Herbo, a digital marketplace, and Fitrix, a fitness tracker.  [Id. at ¶¶ 72-74.]

ESSI also entered into a financing agreement with Phenix, another company controlled by Giguiere.  ESSI agreed to sell ten million shares of its stock to Phenix at a discounted price based on a formula contained in the agreement.  [Id. at ¶¶ 100-01.]

The last relevant transaction occurred in 2017, where ESSI signed a letter of intent to acquire Ga-Du Bank, Inc. ("Ga-

Du"), an entity controlled by Lewis and Oveson. [Id. at ¶¶ 38-39, 105.] A May 5, 2017 ESSI press release stated acquisition of Ga-Du would allow it to "provid[e] payment processing, cash management and financial services to its customers in the cannabis industry." [Id. at ¶ 105.] However, Plaintiffs allege Ga-Du's charter and formation were questionable. [Id. at ¶ 106.] As a result of the acquisition process, Ga-Du became a wholly owned subsidiary of ESSI, Lewis became the Ga-Du CEO, Oveson became the Ga-Du Chief Operating Officer ("COO"), each was given a base salary of $120,000, and each was appointed as an ESSI director. [Id. at ¶¶ 115, 119.]

In total, the Amended Complaint alleges Defendants caused a loss of market capitalization of over $137 million, seeing the stock price of ESSI drop from a high of $4.58, on January 20, 2017, to a low of $0.28, on June 12, 2017. [Id. at ¶ 116.] J. Taylor and D. Taylor each received three million shares of ESSI stock, worth $8,190,000 each at the time of issuance, as "stock-based compensation recorded as management fees." [Id. at ¶ 117.] J. Taylor and D. Taylor also received $115,000 and $105,000 salaries, respectively, for 2016. [Id.] In addition to their salaries, Lewis and Oveson were given the option to purchase 2.5 million shares and 1.5 million shares, respectively, of ESSI stock at $2.00 per share. [Id. at ¶ 118.] Throughout the process, Giguiere sold over 6.6 million shares of

4

ESSI stock, resulting in proceeds of over $8.5 million, some of which was funneled, through a third-party, back into ESSI accounts to pay for salaries. [Id. at ¶¶ 97-99.]

On June 29, 2018, Giguiere was indicted in a California federal court on: two counts of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; and two counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5. [Amended Complaint, Exh. B (Indictment in United States v. Giguiere, et al., Case No. 18 CR 3071 WQH (S.D. Cal.) ("California Indictment")).] The California Indictment is based, in part, on the same events and facts as the instant case with regard to ESSI and TheMoneyStreet.com. [Amended Complaint at ¶¶ 136-39.] A jury trial in the criminal case is currently scheduled to begin on for August 20, 2019. [Reply at 3.]

On July 6, 2018, following a parallel investigation, the Securities and Exchange Commission ("SEC") filed a civil action based on Giguiere's involvement with ESSI and other corporations. [Amended Complaint at ¶ 143 & Exh. A (Complaint in S.E.C. v. Giguiere, et al., Case No. 18CV1530 BEN JLB (S.D. Cal.) ("SEC Complaint")).] The SEC Complaint alleges Giguiere violated § 78j(b) and § 240.10b-5(a) and (c). The SEC action was stayed pending resolution of Giguiere's criminal charges. [Amended Complaint at ¶¶ 143-48.]

5

Defendants' Motion seeks a stay of the proceedings in the instant case, pending resolution of the criminal case against Giguiere. The Motion argues Giguiere's Fifth Amendment rights will substantially interfere with the discovery process as to all Defendants in this case.

**STANDARD**

> The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989); Securities & Exchange Comm'n v. Dresser Indus., 628 F.2d 1368, 1375 (D.C. Cir.), *cert. denied*, 449 U.S. 993, 101 S. Ct. 529, 66 L. Ed. 2d 289 (1980). "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." Dresser, 628 F.2d at 1374. "Nevertheless, a court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem [] to require such action.'" Id. at 1375 (quoting United States v. Kordel, 397 U.S. 1, 12 n.27, 90 S. Ct. 763, 769 n.27, 25 L. Ed. 2d 1 (1970)).

Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) (alterations in Keating). In determining whether a stay is appropriate, the court should weigh the "particular circumstances and competing interests involved in the case." Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). This analysis generally includes:

> (1) the extent to which the defendant's Fifth Amendment rights are implicated, (2) the interest of the plaintiffs in proceeding expeditiously, (3) the burden the proceedings may impose on the

6

>       defendants, (4) the convenience of the court and
>       the efficient use of judicial resources, (5) the
>       interests of persons not parties to the civil
>       litigation, and (6) the interest of the public in
>       the pending civil and criminal litigation.

S.E.C. v. Glob. Express Capital Real Estate Inv. Fund, I, LLC, 289 F. App'x 183, 191 (9th Cir. 2008) (citing Keating, 45 F.3d at 324-25).

## DISCUSSION

### I. Defendants' Fifth Amendment Rights

The Court acknowledges that Giguiere's Fifth Amendment rights are clearly implicated in the parallel civil and criminal proceedings against him.  This is especially true as he has been indicted in the criminal case and a trial date has already been set.  Cf. id. at 191 ("The case for staying civil proceedings is weak when no indictment has been returned." (citing Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 903 (9th Cir. 1989))).  The facts and events that form the basis of the Amended Complaint are substantially similar to, and in some instances based on, the facts and events described in the California Indictment.  Compare Amended Complaint at ¶¶ 66, 73, and 97; with California Indictment at ¶ 35(c), (f), and (i).

However, Giguiere is only one of five individual Defendants in this case.  The other four individual Defendants are neither named nor charged in the California Indictment, and as such face no risk of burdening their Fifth Amendment rights

by proceeding in the instant case. Because the first Keating factor weighs in favor of a stay with regard to Giguiere, but against a stay as to the other Defendants, this factor weighs only slightly in favor of a stay, when the case is considered as a whole.

## II. **Plaintiffs' Interests**

Plaintiffs have a general interest in proceeding expeditiously with litigation, to preserve the integrity of testimony and evidence and to achieve adequate redress. See U.S. E.E.O.C. v. Global Horizons, Inc., Cv. No. 11-00257 DAE-RLP, 2011 WL 5325747, at *6 (D. Hawai`i Nov. 2, 2011). Thus, the second Keating factor weighs against a stay.

## III. **Burden on Defendants**

Defendants argue the third Keating factor, the burden placed on them by moving forward with the proceedings, weighs heavily in favor of a stay, as the individual Defendants will be unable to adequately prepare their defenses without access to Giguiere's unfettered testimony, which will be unavailable upon his invocation of his Fifth Amendment rights. This incorrectly assumes that Defendants are entitled to Giguiere's testimony in disproving their own individual liabilities in this case. Giguiere's Fifth Amendment rights do not extend beyond himself. See United States v. Nobles, 422 U.S. 225, 234 (1975) ("[T]he Fifth Amendment privilege against compulsory self-incrimination,

8

being personal to the defendant, does not extend to the testimony or statements of third parties . . . ."). Aside from Giguiere, Defendants are not facing parallel criminal charges, and as such are not substantially hindered from participating in discovery at this time. Given that Giguiere is the only Defendant with a cognizable burden on his Fifth Amendment rights, the Court finds this factor only slightly in favor of a stay.

The Court acknowledges Giguiere's assertion that litigating parallel proceedings can be burdensome on a defendant with regard to the ability to prepare an adequate defense. However, this argument is unpersuasive in this instance as Giguiere previously argued against a stay in the SEC action, indicating that proceeding with multiple litigations at the same time is within his capacity. <u>See</u> Mem. in Opp., Decl. of Craig W. Smith ("Smith Decl."), Exh. B (Giguiere's Mem. of Points and Authorities in Opp. to the United States' Motion to Stay Civil Proceedings, filed 9/10/18 in the SEC action). To the extent that Giguiere will suffer additional burden as a defendant in both the instant case and the criminal action, the Court finds no reason to stay the case in light of his previous statements.

## IV. Interests of the Court

The fourth factor looks to "the convenience of the court in the management of its cases, and the efficient use of judicial resources." Keating, 45 F.3d at 325. Defendants argue proceeding with discovery at this time will be costly and unduly complicated because the risk of duplicative proceedings is high, and, like in the SEC action, the assertion of Defendants' Fifth Amendment rights will hamper the process.

However, the parties have not even begun discovery in this case. There is little risk of duplicative proceedings in the parallel cases as a majority of the criminal proceedings will likely conclude before the instant case completes discovery. As discussed above, the individual Defendants other than Giguiere are able to proceed with discovery unhindered by Fifth Amendment concerns. In contrast, delaying all discovery and other proceedings in the instant case until the resolution of the criminal case will unnecessarily delay the instant case would not be an "efficient use of judicial resources." See Keating, 45 F.3d at 325. The Court therefore finds the fourth Keating factor weighs minimally in favor of a stay at this time.

## V. Interests of Third-Parties

The fifth Keating factor – the interests of third-parties, here, mainly other shareholders of ESSI stock – weigh against a stay.

**VI. The Public Interest**

The interest of the public may be reasonably inferred by the United States of America's ("Government") stance on the parallel proceedings. See In re CFS-Related Sec. Fraud Litig., 256 F. Supp. 2d 1227, 1242 (N.D. Okla. 2003). Here, the Government has chosen not to intervene in the instant case, whereas it did in the SEC action. See Smith Decl., Exh. A (Government's Motions to (1) Intervene; and (2) Stay Proceedings). The Court construes this as acknowledgement by the Government, on behalf of the public, that justice will best be served by proceeding expeditiously with this litigation. In addition, the public has a general interest in the prompt resolution of both civil and criminal cases. CFS-Related Sec. Fraud Litig., 256 F. Supp. 2d at 1242.

After weighing all of the relevant factors, the Court concludes no substantial prejudice will result from proceeding with the parallel criminal and civil cases. See Keating, 45 F.3d at 324. Giguiere's Fifth Amendment rights may be implicated by the parallel proceedings, but his assertions of those rights are more efficiently dealt with as they arise, rather than staying discovery as to all Defendants and effectively halting the instant case for at least another five months.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion to Stay Civil Case, filed January 29, 2019, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, April 26, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**IAN BELL, ETC., ET AL. VS. JEFFREY TAYLOR, ET AL; CV 17-00530 LEK-RLP; ORDER DENYING DEFENDANT'S MOTION TO STAY CIVIL CASE**